IN THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 17-00144 (EAG) |
| OSCAR CRESPO QUIÑONES | Chapter 7 |
| DEBTOR | |
| | |
| ARLENE SANTIAGO VELAZQUEZ | ADVERSARY CASE NO. 22-00025 |
| PLAINTIFF | |
| v. | FILED & ENTERED ON 11/17/2023 |
| OSCAR CRESPO QUIÑONES | |
| DEFENDANT | |

**OPINION AND ORDER**

Before marrying, Dr. Oscar Crespo agreed in writing to pay Ms. Arlene Santiago a monthly stipend should they divorce. Additionally, during the marriage they entered into another agreement giving Ms. Santiago a 50% interest in a private corporation and providing for its disposition in case of divorce. Their marriage ended in divorce. Pending before the court are the motion for summary judgment by plaintiff Ms. Santiago to declare the obligations arising from these two agreements excepted from discharge, the opposition by defendant Dr. Crespo, and the cross-motion for summary judgment by Dr. Crespo to declare that these obligations are not excepted from discharge. For the reasons stated below, the court grants the motion for summary judgment of Ms. Santiago and denies motion cross-motion for summary judgment of Dr. Crespo.

**I. Jurisdiction**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11

Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). [1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. Procedural History

On January 13, 2017, Dr. Crespo filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Bankr. Dkt. No. 1.) No plan was confirmed. The case was converted to chapter 7 in August 2018, at the request of Dr. Crespo. (Bankr. Dkt. No. 189 & 193.) The order of discharge was entered on September 30, 2021. (Bankr. Dkt. No. 304.)

On July 12, 2019, Ms. Santiago filed her first adversary proceeding against Dr. Crespo to except from discharge debts incurred by false pretenses, false representations, or actual fraud under section 523(a)(2) and by willful and malicious injury under section 523(a)(6). (Adv. No. 19-000397, Dkt. No. 1.) On September 6, 2019, Dr. Crespo answered and counterclaimed for a judgment declaring that neither of Ms. Santiago's two proofs of claim qualified as a domestic support obligation ("DSO") and finding that she violated the automatic stay and should be held in civil contempt. (Adv. No. 19-000397, Dkt. No. 16.)

Dr. Crespo moved for summary judgment on his counterclaim to declare that the DSO portions of Ms. Santiago's proof of claim were not a DSO and, therefore, dischargeable. (Adv. No. 19-00397, Dkt. No. 93.) In an opinion and order, the court denied Dr. Crespo's motion for summary judgment and clarified that, even if it had found that the debts were not a DSO, there were other grounds which were not included in Ms. Santiago's complaint and not time barred -- most notably section 523(a)(15) – which could except from discharge these obligations. (Adv. No. 19-00397, Dkt. No. 148.)

On February 8, 2022, at the request of Dr. Crespo and Ms. Santiago, the court dismissed the main bankruptcy case. (Bankr. Dkt. 353.) The discharge of Dr. Crespo was left unaffected by the dismissal. The adversary proceeding was dismissed without prejudice pursuant to Local Bankruptcy Rule 7041-1.

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

On April 26, 2022, Ms. Santiago filed the present adversary complaint. She seeks to except from discharge, under section 523(a)(15), certain claims which she alleges were incurred in connection with a separation agreement or divorce decree.

### III. Ms. Santiago's Arguments

Ms. Santiago divides her claims in two parts.

The first, she says is a "DSO claim" in the amount of $956,105.45.[2] This claim arises from the prenuptial agreement which provided that, upon divorce, Dr. Crespo would pay Ms. Santiago $5,000.00 monthly for life.

The second arises from a private agreement signed during their marriage. Through this private agreement, Ms. Santiago became 50% owner of Open M.R.I. of the Caribbean, Inc. The agreement contained a provision which stated that, in case of a divorce, Ms. Santiago had to sell her 50% interest to Dr. Crespo. Upon the filing of the divorce, Ms. Santiago filed a state court action to quantify her interest in Open M.R.I. and liquidate it. The state court entered judgment in her favor and determined that she was entitled to $1,148,000.00, plus legal interest, and $15,000.00.[3]

Ms. Santiago alleges that both obligations are excepted from discharge pursuant to section 523(a)(15) because they are owed to a former spouse, incurred by the debtor during a divorce or separation, and validated by state court judgments.

### IV. Dr. Crespo's Response and Cross-Motion for Summary Judgment

Dr. Crespo argues that the state court judgments that quantified Ms. Santiago's claims against him also determined that they were not related to their divorce proceedings.

The first obligation, Dr. Crespo agrees arises from their prenuptial agreement. But he argues it consequently could not be claimed by Ms. Santiago in family court in the divorce proceedings and that the prenup is not a separation agreement. The state court expressly stated that the prenuptial agreement was not considered a settlement agreement within the divorce proceedings. Because of the prenuptial agreement, their marriage did not create a conjugal partnership of assets (akin to community property in some other jurisdictions). Thus, as there was no conjugal partnership, Ms. Santiago cannot have a claim to settle or divided conjugal property.

---

[2] This is the balance owed at the filing date of the adversary proceeding.
[3] The exact balance owed at the filing date of the adversary proceeding was $1,471,618.05 and $15,000.00.

Dr. Crespo claims that the second obligation is related to a corporate interest acquired by Ms. Santiago through a private contract. Ms. Santiago asserted her rights for remedies under corporate law and, again, unrelated to their divorce proceedings.

Dr. Crespo asks this court to declare that both claims are dischargeable. He says:

> [I]t can be asserted that the State Courts' adjudications affirmatively concluded that (a) claims were not tried within divorce proceedings and were affirmatively removed from there; (b) claims are not obligations that arise from a legal settlement contract or divorce; (c) the Courts have only been ruling on contractual obligation separate from the divorce incurred by private parties; (d) the parties were not engaged in any proceeding, agreement or division of spousal community property; (e) the plaintiff pursued her claims through claims for reliefs of a contractual and corporate nature, unrelated to any divorce proceedings.

Dr. Crespo asserts that state court judgments have already determined that Ms. Santiago's claims do not arise from their divorce proceedings or a separation agreement and, thus, the bankruptcy court is precluded from modifying those determinations under the Rooker Feldman doctrine and/or res judicata.

## V. Uncontested Facts

Many of the facts relevant in this adversary proceeding were established by the court in adversary proceeding number 19-00397 at docket number 148. Those same facts are also supported by the record in this adversary proceeding. Thus, the court incorporates them herein:

1. Dr. Crespo and Ms. Santiago met in 1997, while Ms. Santiago was working as a medical sales representative. (Adv. Dkt. No. 20 at p. 12; Adv. Dkt. No. 47-1 at p. 6.)

2. The two courted for several years before marrying on May 18, 1999, in San Juan, Puerto Rico. (Adv. Dkt. No. 20 at p. 12; Adv. Dkt. No. 47-1 at p. 6.)

3. Prior to marrying, Dr. Crespo asked Ms. Santiago to "stop working, and in exchange, he offered her as guarantee support of $5,000 [per] month to be payable in the event that they divorced." (Adv. Dkt. No. 20 at p. 12; Adv. Dkt. No. 47-1 at p. 6.)

4. To memorialize this arrangement, Dr. Crespo and Ms. Santiago entered into a prenuptial agreement, which was executed before a notary in a public instrument dated April 15, 1999. (Adv. Dkt. No. 20 at p. 13, Adv. Dkt. No. 47-1 at p. 7.)

5. The prenuptial agreement included the following clause:

> FOURTH: The parties clarify and agree that the appearing party Arlene Ethel Santiago at present has a salary from her current job of Five Thousand Dollars monthly. In the event that the appearing parties divorce, appearing party Oscar

Crespo Quiñones agrees to establish a support for a value equivalent to said Five Thousand Dollars, taking in consideration the cost of living that said amount represents at this time.

6. The family court divorced Dr. Crespo and Ms. Santiago in case number KDI2005-0850. (Adv. Dkt. No. 47-3.)

7. The divorce decree was entered on October 30, 2006, and amended *nunc pro tunc* on December 27, 2006. (Adv. Dkt. No. 47-3.)

8. It incorporated the fourth clause of the prenuptial agreement, stating: "the stipulated clauses of the prenuptial agreements on the payment of the $5,000 a month to benefit Mrs. Santiago will go into effect" on November 1, 2006. (Adv. Dkt. No. 20 at p.p. 13 and 32; Adv. Dkt. No. 47-1 at p. 7.)

9. The divorce decree also stated that "there is no conjugal assets as the parties granted prenuptial agreements." (Adv. Dkt. No. 20 at p. 32; Adv. Dkt. No. 47-2 at p. 4.)

The court also finds these additional facts as uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d):

10. Ms. Santiago tried to collect through the family court the monthly stipend now incorporated into the divorce decree, but the family court held she needed to do so in a separate action outside the family court. (Adv. Dkt. No. 20 at p. 13; Adv. Dkt. No. 47-1 at p. 7.)

11. The family court's decision was affirmed by the Court of Appeals and the Supreme Court of Puerto Rico. (Adv. Dkt. No. 20 at p.p. 13-14; Adv. Dkt. No. 47-1 at p.p. 7-8.)

12. Thus, Ms. Santiago filed a separate state court complaint for the specific compliance of the contract and collection of money, case number KAC2010-1494. (Adv. Dkt. No. 20, p. 7; Adv. Dkt. No. 47-1 at p. 2.)

13. In this separate state court action, the court enter a judgment in which it concluded:

[I]t clearly appears from the divorce judgment that the Court enforced the fourth c[l]ause of the prenuptial agreement and did not give it the treatment of ex spousal support. As a matter of fact, the Court of Appeals entered a judgment finding that the claim of the monthly and lifelong support did not arise from the settlement agreement that was affected by the Divorce Judgment. Just the opposite, the appellate forum concluded that the debt and the support should be claimed in a separate lawsuit and that it arose from the contractual breach of the provision that the divorce judgment activated.

(Adv. Dkt. 20, p. 23; Adv. Dkt. 47-1 at p. 17.)

14. However, the state court found that "[t]he fourth clause of the prenuptial agreement is the law between the parties and Mr. Crespo Quiñones is obligated to abide by it." (Adv. Dkt. No. 20, at p. 26; Adv. Dkt. No. 47-1 at p. 20.)

15. Prior to their divorce, on November 4, 2004, Dr. Crespo, Ms. Santiago, and Open M.R.I. of the Caribbean, Inc. entered into a Private Agreement, which stated:

> Divorce: In the event that Dr. Crespo Quiñones, Mrs. Arlene Santiago Velázquez or any other future shareholder were to get a divorce from his/her/their respective spouses, whichever the case may be, by final and enforceable decree issued by a competent court, such spouses do hereby agree, covenant and stipulate that, if any share of the Corporation were to be awarded or assigned to them as part of the liquidation of the conjugal partnership of gains, they cannot remain as shareholders of the Corporation, and shall therefore have to sell such share or shares. They shall first offer the shares to the shareholder from whom they divorced, who shall have thirty (30) days to accept or reject the offer. The sale shall be for the book value of the shares. If the shareholder that said spouse divorced does not wish to purchase any or all of the shares, then said spouse shall sell the shares in his/her possession in accordance with the provisions of the "Sales" clause of this Agreement. This process must commence no later than the day after the day when the answer to his/her offer is received from the shareholder that he/she divorced."

(Adv. Dkt. No. 20 at p.p. 51-52; Adv. Dkt. No. 47-2 at p.p. 5-6.)

16. On September 27, 2006, Ms. Santiago filed a complaint (case number KAC2006-5977) for liquidation of corporate assets, breach of contract, and corporate coadministration against Open M.R.I. of Puerto Rico, Inc. and Open M.R.I. of the Caribbean, Inc. (Adv. Dkt. No. 20 at p. 35; Adv. Dkt. 47-10; Adv. Dkt. No. 47-11 at p. 3.)

17. In the judgment entered in case number KAC2006-5977, the state court found that Open M.R.I. of the Caribbean Inc. was the owner of 100% of the shares of Open M.R.I. of Puerto Rico, Inc. (Adv. Dkt. No. 20 at p. 35; Adv. Dkt. No. 47-11 at p. 3.)

18. The state court also determined that the value of 100% of the shares in Open M.R.I. of Puerto Rico, Inc. was $2,296,000.00. (Adv. Dkt. No. 20 at p. 35; Adv. Dkt. No. 47-11 at p. 3.)

19. The state court ordered the liquidation of Mrs. Santiago's 50% shares in Open M.R.I. of the Caribbean, Inc. for $1,148,000. (Adv. Dkt. No. 20 at p. 36; Adv. Dkt. No. 47-11 at p. 4.)

20. In 2014, the Puerto Rico Department of State revoked the certificate of incorporation of Open M.R.I. of Puerto Rico. (Adv. Dkt. No. 20 at 36; Adv. Dkt. No. 47-11 at p. 4.)

21. Ms. Santiago filed a separate complaint against Dr. Crespo, Open M.R.I. of Puerto Rico, Inc., and others for collection of debt from the corporation and shareholders, to pierce the corporate

veil, and for execution of judgment and collection of monies (case number KAC2014-0835). (Adv. Dkt. No. 20 at p. 33; Adv. Dkt. No. 47-11 at p. 1.)

22. The state court in case number KAC2014-0835 entered a judgment on July 23, 2021, which concluded the following:

> The evidence in the file shows that there is a Private Agreement Between Shareholders in which the following parties appeared: (1) Open M.R.I. of the Caribbean, Inc., (2) Dr. Crespo Quiñones, and (3) Mrs. Santiago Velázquez. In this contract, the terms and conditions for selling shares and for liquidating these in the event of divorce were set forth. This agreement is valid and, therefore, the Court cannot relieve a party from its duty to fulfill what it agreed to do under the contract. Therefore, in this case, what is appropriate is for the contract to be performed. However, given that the corporation does not exist, it is impossible for Mrs. Santiago Velázquez to be able to sell the shares to a third party. Besides that, given that Open M.R.I. of the Caribbean is nonexistent, it would be impossible for it to acquire the shares of Mrs. Santiago Velázquez. Therefore, it is incumbent on Dr. Oscar Crespo Quiñones to perform the contract. For this reason, piercing the corporate veil is inconsequent, because Dr. Oscar Crespo Quiñones and Mrs. Santiago Velázquez are the only shareholders or contracting parties and the outcome would be the same.

(Adv. Dkt. No. 20 at p. 45; Adv. Dkt. No. 47-11 at p. 13.) (citation omitted).

## V. Legal Analysis and Discussion

   a. Summary Judgment Standard

The standard for summary judgment is well-known. Pursuant to Rule 56 made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence but must affirmatively point

to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . .." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28,34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences. . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d

594, 603 (1st Cir. 1995) (quoting <u>Federacion de Empleados del Tribunal Gen. de Justicia v. Torres</u>, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential fact finding, including the sifting of inferences." <u>Id</u>.

For the reasons stated below, the court concludes that no material issue of fact exists and that Ms. Santiago is entitled to judgment as a matter of law holding that her claims against Dr. Crespo are excepted, under section 523(a)(15), from discharge.

b. <u>Rooker Feldman Doctrine and res judicata</u>

Dr. Crespo argues that the Rooker-Feldman and res judicata doctrines bar Ms. Santiago's action to exempt from discharge her claims against him. Because the state court ruled that the fourth clause in the prenuptial agreement did not give Ms. Santiago a right under Puerto Rico law to ex-spousal support (something remotely akin to alimony in other jurisdictions), Dr. Crespo alleges that the state court already ruled, in effect, that her claims are not excepted from discharge under sections 523(a)(5) and 523(a)(15).

Dr. Crespo is correct in asserting that the state court decided that the monthly obligation stipulated in the fourth clause of the prenuptial agreement was an obligation arising from a private contract, not an award of ex-spousal support under Puerto Rico family law imposed by a divorce decree. According to the state court, the divorce judgment only triggered the contractual obligation because the parties had so stipulated in the prenuptial agreement. The divorce decree entered on October 30, 2006, and amended on December 27, 2006, stated that "[a]s of November 1, 2006, the stipulated clauses of the prenuptial agreements on the payment of the $5,000 a month to benefit Mrs. Santiago will go into effect." (Adv. Dkt. No. 20 at p.p. 13 and 32; Adv. Dkt. No. 47-1 at p. 7.) Therefore, Ms. Santiago had to file a separate action – outside of the family court – to enforce her contractual right to the monthly stipend. She could not claim it as ex-spousal support arising from the divorce decree. And Dr. Crespo could not be found in contempt of the divorce decree for failing to pay the monthly stipend.

However, Dr. Crespo stretches too much the effect of the state court decisions.

"The Rooker-Feldman doctrine prohibits lower federal courts, including bankruptcy courts, from reviewing final state court judgments." <u>In Re Schwartz</u>, 409 B.R. 240, 247 (B.A.P 1st Cir. 2008). But "[i]f a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction, and state

law determines whether the defendant prevails under preclusion principles." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005). The action here to except from discharge her claims is an independent claim and different from her state court claims. There, Ms. Santiago sued to enforce obligations arising from private agreements with Dr. Crespo. Here, Ms. Santiago asks the court to hold those obligations excepted from discharge under section 523(a)(15). Thus, state-law preclusion principles govern this case.

"The doctrines of res judicata and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been rendered." Ortiz v. Ovalles (In re Ovalles), 619 B.R. 23, 32 (Bankr. D.P.R. 2020). (quoting Sistemas Integrados De Salud Del Suroeste, Inc. v. Medical Educ. & Health Servs. (In re Medical Educ. & Health Servs.), 474 B.R. 44, 54 (D.P.R. 2012) "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." Medical Educ. & Health Servs., 474 B.R. at 54 (quoting United States v. Mendoza, 464 U.S. 154, 158, 104 S. Ct. 568, 78 L. Ed. 2d 379 (1984)).

"Res judicata applies when the following exist: '(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.'" Gonzalez-Pina v. Guillermo Rodriguez, 407 F.3d 425, 429 (1st Cir. 2005) (quoting Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)). Here there is not "sufficient identicality between the causes of action asserted in the earlier and later lawsuits" for res judicata to apply. Ms. Santiago sought to impose and enforce obligations against Dr. Crespo in the state court litigation. In this adversary proceeding, Ms. Santiago wants to except from discharge those obligations.

"[F]or collateral estoppel to apply, three factors must be present: 'there must be an identity of issues; the prior proceedings must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding.'" Aguiar v. Santiago (In re Santiago), 2018 Bankr. LEXIS 913, *11-12 (Bankr. D. P.R. 2018). Again, as there is no identity of issues, Ms. Santiago is not collaterally estopped to prosecute this action to except from discharge under section 523(a)(15) her claims against Dr. Crespo.

c.  Obligations excepted from discharge under section 523(a)(15)

"Section 523(a)(15) applies to debts that are incurred 'in the course of' a divorce or 'in connection with' a separation agreement or divorce decree." Peery v. Escobar (In re Peery), 2019 Bankr. LEXIS 2441, *11-12 (9th Cir. B.A.P. 2019). To establish an exception to discharge under section 523(a)(15), the following three elements must be established:

> (1) that the debt in question is to a spouse, former spouse or child of the debtor; (2) the debt is not a support obligation of the type described in § 523(a)(5); and (3) the obligation was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record.

Adam v. Dobin (In re Adam), 2015 Bankr. LEXIS 1147, *15 (9th Cir. B.A.P. 2015).

In interpreting the third element, the court in Carroll v. Bohrer (In re Bohrer), 628 B.R. 676 (Bankr. S.D. Cal. 2021) turned to general and legal dictionaries to determine the ordinary meaning of the phrases "in connection with" and "in the course of" included in section 523(a)(15). The Carroll court stated that:

> [t]he phrase 'in the course of a divorce or separation' . . . means during the progression or period of a divorce or separation. It operates as a temporal limitation on the dischargeability of debts owed to a former spouse, requiring the debt be incurred during the time when the divorce or separation is ongoing.

Carroll v. Bohrer (In re Bohrer), 628 B.R. at 685. The Carroll court also concluded that:

> [t]he phrase 'in connection with a separation agreement, divorce decree, or other order of a court of record' . . . operates as a topical limitation, requiring that the debt be logically or causally related to an enumerated document.
>
> As defined, the words course and connection are unambiguous. The one acts as a limitation on time and the other as a limitation on relationship. Each limitation, however, is broad and may include a wide array of divorce-related debts. Consequently, the court must interpret and apply each statutory phrase broadly. To that point, so long as the debt owed is linked either through time or relation, it is nondischargeable under § 523(a)(15).

Id. "Because Congress enacted § 523(a)(15) to broaden the types of marital debts that are nondischargeable, beyond those described in § 523(a)(5), 'by implication a § 523(a)(15) exception from discharge would also be construed more liberally than other § 523 exceptions.'" Adam v. Dobin (In re Adam), 2015 Bankr. LEXIS 1147 at *14.

The court in <u>Davis v. Saulsbury (In re Saulsbury)</u>, 2012 Bankr. LEXIS 5251, *6 (Bankr. N.D. N.Y. 2012) determined that an obligation arising from a prenuptial agreement triggered by a divorce action constituted debt incurred "in the course of" a divorce and was excepted from discharge under section 523(a)(15). "The crucial question is: what were the relative rights and obligations of the debtor and the former spouse before and after the divorce?" <u>Sherman v. Proyect (In re Proyect)</u>, 503 B.R. 765, 775 (Bankr. N.D. Ga. 2013) (holding that reinstatement of preexisting obligations in a settlement agreement does not create a new debt that did not already exist).

The first prerequisite of section 523(a)(15) is plainly satisfied here. Both debts are owed to the former spouse of Dr. Crespo. And there is no dispute here that neither debt is a DSO. Admittedly, the third prerequisite of section 523(a)(15) is the most debatable here. But, based on the existing caselaw, the court concludes that because both debts were triggered by the divorce decree, they were incurred "in the course of" the divorce. See <u>Davis v. Saulsbury (In re Saulsbury)</u>, 2012 Bankr. LEXIS 5251 at *6.

## VI. <u>Conclusion</u>

The court finds that the $5,000 monthly stipend owed to Ms. Santiago by Dr. Crespo is excepted from discharge under section 523(a)(15). The court also finds that the debt owed to Ms. Santiago by Dr. Crespo for the liquidation of her interest in Open M.R.I. of the Caribbean, Inc. and Open M.R.I. of Puerto Rico, Inc. is likewise excepted from discharge under section 523(a)(15).

Therefore, the court grants summary judgment in favor of Ms. Santiago (Adv. Dkt. No. 21.) and denies the opposition to summary judgment and cross-motion for summary judgment filed by Dr. Crespo (Adv. Dkt. No. 48.).

IT IS SO ORDERED.

` In San Juan, Puerto Rico, this 17th of November, 2023.

Edward A. Godoy
United States Bankruptcy Judge